

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
DEC 27 2018
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| GEORGE MOORE, | : |
| Plaintiff, | : Case No. |
| v. | : **1:18-cv-08480** |
| UNIFIED CARING ASSOCIATION and VICTORIA DAMONE a.k.a. VICTORIA COOPER, | : **Judge Jorge L. Alonso** : **Magistrate Judge Young B. Kim** |
| Defendants. | : |

## COMPLAINT

Plaintiff George Moore states as follows for his complaint against Unified Caring Association and Victoria Damone a.k.a. Victoria Cooper:

### Nature of the Case

1. This action arises out of the Defendants' repeated violations of, *inter alia*, the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), and the Illinois Automatic Telephone Dialers Act, 815 ILCS 305, et seq. ("ATDA").

2. This case involves a telemarketing campaign by Defendant Unified Caring Association to market their services through the use of autodialed prerecorded messages in violation of the TCPA and ATDA.

3. Mr. Moore never consented to receive these calls. In fact, Mr. Moore registered his telephone number in 2003 on the National Do Not Call Registry where it remains.

### PARTIES

4. Plaintiff George Moore is a natural person and resident of Illinois in this District.

1

5. Defendant Unified Caring Association ("UCA") is an Arizona Corporation that has its principal office in Mount Shasta, California and a registered agent of Corporate Creations Network Inc., 350 S. Northwest Highway #300, Park Ridge, IL 60068. UCA places telemarketing calls into this District, as it did with the Plaintiff.

6. Defendant Victoria Damone a.k.a. Victoria Cooper is a natural person and resident of the State of California. She is an officer of UCA and its president.

## JURISDICTION & VENUE

7. The Court has federal question subject matter jurisdiction over these TCPA claims.

8. The Court has supplemental jurisdiction over these ATDA claims pursuant to 28 U.S.C. § 1367, since they form part of the same case and arise from the same set of facts.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant UCA is a resident of this district, and because the Plaintiff is a resident of this district, which is where he received the illegal telemarketing calls that are the subject of this lawsuit.

## TCPA BACKGROUND

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes." *See* 47 U.S.C. § 227(b)(1)(B).

2

12. The TCPA provides a private cause of action to persons who receive such calls. *See* 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd 1830, 1844 (2012) (footnotes omitted).

The National Do Not Call Registry

15. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

17. A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages. 47 U.S.C. § 227(c)(5).

## ATDA BACKGROUND

18. In 1991, the Illinois General Assembly enacted the ATDA to regulate the use of autodialers, in response to many complaints received by the Attorney General's office. Automatic Telephone Dialers Act (codified at 815 Ill. Comp. Stat. 305/1, et seq.)

19. As amended in 2013, the ATDA provides for treble actual damages, statutory damages of $500 per violation, and costs. 815 ILCS 305/30(c)-(c-5).

The ATDA Prohibits Automated Telemarketing Calls

20. The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/30(b).

21. Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a).[1]

## FACTUAL ALLEGATIONS

22. On or about July 6, 2003, Plaintiff registered his residential telephone number, (630) 510-XXXX on the National Do Not Call Registry.

---

[1] The term "autodialer" or "autodialer system" does not include "device[s] associated with a burglar alarm system, voice message system or fire alarm system." 815 ILCS 305/5(a).

4

23. Plaintiff has never removed his residential telephone number from the Registry.

24. On November 2, 3, 9 and 30, 2017 and December 4, 6 and 9, 2017, Plaintiff received telemarketing calls from caller ID number (224) 339-5988.

25. When Plaintiff answered the calls, he heard a prerecorded message.

26. The purpose of these calls was to sell UCA's goods and services.

27. When the Plaintiff pressed the number 1 on his telephone at the end of the prerecorded message, he became connected with a representative who identified himself as a member of the "health registration department".

28. In order to discover the identity of the calling party, the Plaintiff listened to the telemarketing pitch. However, he did not authorize any purchase, choosing instead to hang up while on hold to be connected with UCA's verification department.

29. Nevertheless, UCA proceeded to enroll the Plaintiff in a membership plan of theirs called "Perennial Care", with a monthly fee of $239.90, as the Plaintiff subsequently learned in an e-mail he received from "Member Services".

30. After learning about the transaction the Plaintiff had not authorized, he contacted UCA, who confirmed having record of the enrollment but denied knowledge as to the identity of the party that initiated it.

31. UCA delivers membership materials to its members through an online fulfillment website.

32. In order to further investigate, the Plaintiff gained access to the website.

33. A letter found on the website states that the Plaintiff purchased "a brand of membership in the Unified Caring Association" with monthly fee of $239.90.

34. The letter also states Plaintiff's member ID number as CHP9053211.

35. Plaintiff has been injured by the acts of the Defendants because his privacy has been violated and he was subjected to annoying and harassing calls that constitute a nuisance. Plaintiff was also temporarily deprived of legitimate use of his phone because the phone line was tied up by the illegal calls.

36. Plaintiff did not provide his prior express written consent for the Defendants to place telemarketing calls to him.

## DEFENDANTS' LIABILITY FOR THE TELEMARKETING CALLS

37. UCA is directly liable for the telemarketing calls made by its registration department.

38. Alternatively, UCA is vicariously liable for the telemarketing calls that third parties made on its behalf, as set forth in the following paragraphs.

39. UCA is a "person", as defined by 47 U.S.C. § 153(39).

40. The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

41. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

42. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

6

43. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as UCA may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

44. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

45. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

46. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant.

28 FCC Rcd at 6592 (¶ 46).

47. UCA is legally responsible for ensuring that the party that made the calls complied with the TCPA and ATDA, even if UCA did not itself make the calls.

48. UCA knowingly and actively accepted business that originated through the illegal telemarketing calls from the party that made the calls.

49. Moreover, UCA maintained interim control over the actions of the party that made the calls.

50. For example, UCA had absolute control over whether, and under what circumstances, it would accept a customer.

51. Furthermore, UCA had day-to-day control over the actions of the party that made the calls, including the ability to prohibit it from using prerecorded messages to contact potential customers of UCA and calling phone numbers registered on the National Do Not Call Registry.

52. Additionally, UCA restricted the states in which the party that made the calls could sell certain types of UCA memberships.

53. Moreover, UCA instructed the party that made the calls to transfer the called parties to a third-party verification company UCA had hired to complete the process of signing up a customer for their membership program.

54. In fact, UCA allowed their vendors to bind them in contract following an illegal telemarketing call, as they did in connection with the Plaintiff.

55. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden

of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

Ms. Damone's Liability for the Telemarketing Calls

56. At all relevant times, Defendant Ms. Damone directed the day-to-day activities of UCA as the company's president.

57. When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections,* 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

58. Ms. Damone is personally liable under the "participation theory" of liability because she was the controlling officer of UCA and knew of and authorized the telemarketing conduct that is the subject of this Complaint.

## COUNT I
## VIOLATION OF THE TCPA'S AUTOMATED TELEMARKETING CALL PROVISIONS

59. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

60. The Defendants violated the TCPA by (a) initiating telephone solicitations to the Plaintiff's residential line using a prerecorded message, or (b) by the fact that others made those calls on their behalf. *See* 47 U.S.C. § 227(b); 47 C.F.R. § 64.1200(a)(3).

9

61. The Defendants' violations were willful and/or knowing.

## COUNT II
## VIOLATION OF THE TCPA'S DO NOT CALL PROVISIONS

62. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

63. The Defendants violated the TCPA by (a) initiating telephone solicitations to the Plaintiff's telephone number that is listed on the Do Not Call Registry, or (b) by the fact that others made those calls on their behalf. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

64. The Defendants' violations were willful and/or knowing.

## COUNT III
## VIOLATION OF THE ATDA'S AUTOMATED TELEMARKETING CALL PROVISIONS

65. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

66. The Defendants violated the ATDA by (a) playing prerecorded messages placed by an autodialer to the Plaintiff's residential line, or (b) by the fact that others made those calls on their behalf. *See* 815 ILCS 305/30(b).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that judgment be awarded in Plaintiff's favor and against the Defendants, jointly and severally, as follows:

A. Because of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), treble damages, as provided by statute, of up to $1,500 for every call that violated the TCPA;

B. Because of Defendants' statutory violations of 47 U.S.C. § 227(b), $500 in statutory damages for every call that violated the TCPA;

10

C. Because of Defendants' willful and/or knowing violations of 47 U.S.C. § 227(c), treble damages, as provided by statute, of up to $1,500 for every call that violated the TCPA;

D. Because of Defendants' statutory violations of 47 U.S.C. § 227(c), $500 in statutory damages for every call that violated the TCPA;

E. Because of Defendants' statutory violations of 815 ILCS 305/30(b), $500 in statutory damages for every call that violated the ATDA;

F. Costs of suit;

G. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

RESPECTFULLY SUBMITTED,

GEORGE MOORE,
Pro Se

DATED: December 26, 2018     By: *George Moore*

George Moore
906 Chatham Drive
Carol Stream, IL 60188
Email: gmoore3@att.net
Telephone: (630) 699-3205